Sarame Raynolds STRONG, Plaintiff-Appellant,

v.

William H. G. FRANCE and the National Association for Stock Car Auto Racing, Inc. ("NASCAR"), Defendants-Appellees.

No. 71–1440.

United States Court of Appeals, Ninth Circuit.

Feb. 28, 1973.

Jeffrey J. Parish (argued), Frederick P. Furth, San Francisco, Cal., for plaintiff-appellant.

Bruce W. Belding (argued), of Dinkelspiel & Dinkelspiel, San Francisco, Cal., Nathan Lewin, of Miller, Cassidy, Larroca & Lewin, Washington, D. C., for defendants-appellees.

Before CHAMBERS and CHOY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

This is an appeal from a final judgment, entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, dismissing the complaint of plaintiff-appellant, Sarame Raynolds Strong, as against the defendants-appellees, William H. G. France and the National Association for Stock Car Auto Racing, Inc. (NASCAR), following an order granting appellees' motion for summary judgment pursuant to Rule 56(c).[1]

The complaint alleges violations of federal securities laws[2] stemming from an enterprise involving the creation of a corporation, Sportscaster, Incorporated, for the operation of a "closed circuit" radio broadcasting system at sporting events (golf matches, auto races, horse races) and the rental of small receivers to spectators to provide them with comments, interviews and additional information on the events. The chief promoter of the venture was the defendant Oscar Fraley.[3]

Shortly after the complaint was filed, the deposition of Sally Strong,[4] the plaintiff, was taken, followed by answers of France, both individually and as president of NASCAR, and the defendants Fraley and H. Earle Barber to interrogatories submitted by plaintiff, and affidavits of plaintiff and France, with numerous exhibits. On the basis of these documents, France and NASCAR moved for dismissal and summary judgment. This motion was denied, "expressly without prejudice", following a hearing on January 13, 1969 at which the court stated that he denied the motion with "great reluctance" and "unless a very good showing was made" by the plaintiff on further discovery "the motion to dismiss ought to be granted."

In March, 1969 the depositions of France, Fraley[5] and Barber were taken. There was no further discovery, and after a lapse of ten months the motion for summary judgment was renewed. An order was entered July 3, 1970 granting the motion, the court finding that "the acts attributed to defendants France and NASCAR are so remote from the plaintiff that no genuine issue as to any material fact exists which would support liability as to them."

In its order the trial court recognized that while, in ruling on motions for summary judgment, "all inferences of fact must be drawn in favor of the party opposing the motion (United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) and * * * the moving party has the burden of showing that he is entitled to judgment as a matter of law, (3 Barron and Holtzoff,

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. The action was instituted against nine named defendants, including the two appellees, and 43 unknown parties.

2. Specifically, Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Securities Exchange Commission Rule 10b–5 (17 C.F.R. 240.10b–5).

3. There is some dispute, not material here, as to who first proposed the venture.

4. The action was commenced in the name of Sally Strong. Subsequent to her deposition and affidavit, the court on plaintiff's motion ordered that the caption be changed to conform with her legal name, Sarame Raynolds Strong.

5. Plaintiff was not represented at the taking of Fraley's deposition. See note 7, infra.

Rules Edition, 149), it is also true that 'the opposing party . . . must show that evidence is available which would justify a trial . . . (ibid.). And 'courts should not be unduly reluctant to grant summary judgment when a trial would serve no useful purpose and the movant is entitled to judgment as a matter of law.' (6 Moore's Federal Practice para. 56.02(1))."

The motion here was supported by affidavits, answers to interrogatories, and depositions as provided in Rule 56(e) of the Federal Rules of Civil Procedure. Accordingly appellant "may not rest upon the mere allegations of * * * (her) pleading," but her response, by affidavits or otherwise, "must set forth specific facts showing that there is a genuine issue for trial." [6]

■ Appellant contends on this appeal that:

" * * * there are four separate but interrelated roles played by Mr. France and NASCAR on which their liability to Mrs. Strong is based. These are: (1) that Mr. France agreed to be a director of the Defendant corporation, Sportscaster, Inc., which issued stock to Mrs. Strong; (2) that France acted as a promoter of the venture and agreed to invest in the Defendant corporation; (3) that France and NASCAR were aiders and abettors of Defendants Fraley and Sportscaster, Inc.; and (4) that France and NASCAR were controlling persons of Defendants Fraley and Sportscaster, Inc. In addition, Appellant contends that Appellees' motion was granted prematurely in that Appellant has not completed discovery." [7]

### Factual Background

It is clear from appellant's deposition that she has never met France and has never had any "direct communication either by letter or telephone" with him or anyone at NASCAR. Strong dep. 5, 24. She did not at any time give any money or check to France or NASCAR.[8] Strong dep. 50.

Appellant first met Fraley in 1962. She became associated with him in "putting out programs for sporting events", "put up money" for a closed circuit television broadcast of the Liston-Clay fight

---

6. As this court said in Doff v. Brunswick Corporation, 9 Cir., 372 F.2d 801, 805 (9 Cir. 1967) cert. denied, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71:
    "Where, on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible. . . . The burden of coming forward with specific controverting facts shifts to the opponent. . . . It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality." Citations omitted.
    See also Town House, Inc. v. Paulino, 381 F.2d 811, 814 (9 Cir. 1967); First Nat'l Bank v. Cities Service, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Lundeen v. Cordner, 356 F.2d 169, 170 (8 Cir. 1966) cited in Town House, Inc. v. Paulino, supra, 381 F.2d at 814.

7. We find no merit in appellant's contention that the motion was granted prematurely. Fraley's deposition was taken in Miami, Florida on Friday afternoon, March 21, 1969. Appellant's counsel was not present, presumably through some misunderstanding. The depositions of France and Barber were taken on Monday, March 24. Appellant's counsel was advised that Fraley would be available for further deposition the following day and was given a transcript of Fraley's testimony, which he used in examining Barber. He stated that he did not intend to take Fraley's deposition because of Fraley's "default". Barber dep. 58–68. Sixteen months elapsed between the taking of these depositions and the entry of the order granting appellees' motion.

8. France stated in his answer to interrogatories that he "never offered or induced or attempted to sell any interest in Sportscaster to any person", and in his affidavit that neither he nor NASCAR ever received any money or other consideration directly or indirectly from appellant or any other person in connection with the purchase or sale of securities in Sportscaster, Incorporated.

and "advanced money" for a golf tournament. She also "lent him money for himself when he was in between jobs", mentioning one loan of $8,000.00 [9] in early 1964 and another of $1,500.00 in 1963. Strong dep. 6–9.

Early in 1965 at a golf tournament in Miami, Florida, appellant and Fraley met Tom Burke, who was broadcasting at the tournament. According to appellant, she next met Fraley and Burke at a tournament in Pennsylvania where Fraley and Burke were "forming their own company", and two weeks later in New York, where both discussed the business venture with appellant and solicited an investment from her. Strong dep. 9–12.

Appellant testified that in this conversation Fraley said "he would need anywhere between 50 (sic) and $100,000 for the whole thing to go." Appellant agreed to "advance money if he needed it for the company." She "didn't put any limit on it because he said that he was going to get some of his wealthy friends to put up the money and that I would put up——he was not going to put up any money himself. But that I would put up as if it was his money and I would have a share in the partnership." Strong dep. 17.

At the same meeting Fraley told appellant that he had talked to France and "could get the contracts for racing." She also testified that about three weeks later, when appellant was in Beirut, Lebanon, Fraley phoned her that France "thought this was wonderful and that it would go", and he would use his connections with different people involved with the Racing Association and "would put a great deal of money in the company." Strong dep. 12–13. From time to time thereafter Fraley made a number of

written and oral statements to appellant to the effect that France and NASCAR had agreed to support, promote and heavily invest in Sportscaster. There is no evidence that either France or NASCAR were aware of or authorized any of these statements. Other letters from Fraley to appellant cast some doubt on France's participation in the venture.[10]

On October 25, 1965 NASCAR and Fraley entered into a written contract whereby "NASCAR subject to the further approval by the respective promoters of NASCAR events, does hereby grant to Oscar Fraley and/or his Corporate Assignee, Racecaster, Inc., an exclusive contract for an on-course gallery communication system for a period of five years, provided only that Fraley shall in fact service such first event by not later than June 30, 1966." It was understood that the agreement "may be terminated by NASCAR at any time." [11]

On March 18, 1966 France, as president of NASCAR, wrote a letter addressed "To Whom it May Concern" reading:

"This letter is to serve as confirmation that Mr. Oscar Fraley has a five year agreement with NASCAR for his sportscaster receiving system at the Association's races, subject to his agreements with the track operators.

"This is to further confirm that, to my knowledge, Mr. Fraley is a man of unquestionable character and reliability. He has a vast reputation in the field of sports, having served as syndicated columnist for United Press International and Associated Press, the nation's two largest wire services."

The certificate of incorporation of Sportscaster, Incorporated was filed on

9. Appellant testified in her deposition that the advance for the Liston-Clay fight and this personal loan to Fraley are included in her claim in this case.

10. For example, Fraley wrote appellant on January 3, 1966: "If the thing falls through with France and the vending guy, I'm going to see John MacArthur in Palm Springs Gardens. But this I promise you

—I'm going to put it over and soon." Defts. NASCAR and France Ex. 4.

11. On June 2, 1966, Fraley wrote France requesting a "six months extension in writing" beyond the June 30, 1966 deadline.

France testified that he took no action in response to the request, but "just discarded it." France dep. 86–87.

October 18, 1966 listing Oscar Fraley, H. Earle Barber, an attorney employed by Fraley, and Beatrice S. Smith, Barber's secretary, as incorporators and directors. Fraley was named president, Smith, vice-president, and Barber, secretary-treasurer. Subsequently stock certificates were issued to appellant (for an investment of $9,000) and six other persons (for investments totaling $18,000). No stock was issued to France or NASCAR.

No license was obtained from the Federal Communications Commission for the radio transmission and the enterprise has never been in operation.

Appellant claims that she invested a total of $72,699.41 in Sportscaster. It appears from her deposition, however, that this includes approximately $25,000 advanced to Fraley prior to learning of the proposed Sportscaster venture. Strong dep. 8–9.

With this background we turn to a consideration of the four bases of alleged liability on the part of France and NASCAR.

### France as Director

■ France admits that he told Fraley "when he got his corporation going, he could use my name, and I would serve as director on the company." France dep. 87. Fraley, on March 17, 1966 wrote France to "acknowledge receipt from you of $1,000.00 for stock in Sportscaster, Inc., and permission to use y our (sic) name on the Board of Directors." [12] Plf. Ex. 4, France dep.

■ There is no evidence that France was ever appointed a director, or acted as one, or that Fraley ever "got his corporation going." There can be no fiduciary liability where there is no duty,

express or implied, to act as a fiduciary. Appellant's reliance on Moerman v. Zipco, Inc., 302 F.Supp. 439, 447 (E.D.N.Y. 1969) is misplaced. There the persons held liable had "insisted on being members of the board" of directors, had sold stock, and had signed board minutes and registration statements.

### France and NASCAR as Promoters

Appellant argues that France promoted Sportscaster by offering to use his name as director; by signing a letter of personal recommendation for Fraley addressed "To Whom it May Concern", attesting to the NASCAR-Sportscaster five year contract; and by providing personal assistance.[13]

Appellant argues that NASCAR promoted Sportscaster by sending letters to racetrack operators recommending Sportscaster, "enclosing the NASCAR-Sportscaster contract, a summary of the venture, * * * and possibly portions of a brochure which promised a high return to the investor on a fixed schedule of events."

Appellant concludes:

"The clear implications of these materials are that: (1) Sportscaster had an FCC-approved broadcast frequency; and (2) that Sportscaster was prepared to proceed with broadcasting NASCAR's entire 1966 schedule, which would bring substantial profits to any investor. Both representations were false."

Appellant has cited no case, and we find none, which predicates liability as a promoter on such limited activity so far removed from the person claiming damage. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935)

---

12. France also admitted having agreed to invest $1,000, but denied ever having done so. France dep. 87. Fraley also testified that neither France nor NASCAR had ever invested any money in Sportscaster, Inc. Fraley dep. 49–50.

13. The personal assistance was alleged to consist of an airplane trip to Detroit,

denied by both France and Fraley, France dep. 63, Fraley dep. 58–59; and a Detroit automobile "contact" to provide a free Dodge van for the broadcasting unit. A NASCAR employee did suggest the name of a Dodge employee to contact, which Fraley did and was given the use of a Dodge van. France dep. 56, 85–86; Fraley dep. 59–60.

cited by appellant for the proposition that "a pre-incorporation promoter is a fiduciary", involved an elaborate scheme to defraud, engineered by the "promoter". There is no evidence of such a scheme here engineered by either France or NASCAR, or of any facts upon which France or NASCAR's liability to Strong as a "promoter" of Sportscaster can be predicated.[14]

## France and NASCAR as Aiders and Abettors

Appellant relies upon the same facts to establish liability as an aider and abettor.

■■ "An aider and abettor may be liable for damages even though his assistance of the scheme consists of mere silence or inaction." Anderson v. Francis I. duPont and Co., 291 F.Supp. 705, 709 (D.Minn.1968). That liability arises, however, only when a duty to disclose has arisen. Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833, 848, (2 Cir. 1968) (en banc) cert. denied 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756. The duty to disclose may arise upon the possession of "inside information" as in *Securities and Exchange Commission, supra*; or upon "knowing assistance of or participation in a fraudulent scheme" as in *Anderson, supra;* or upon a consent and approval of fraudulent practices by a director, as in Sprayregen v. Livingston Oil Company, 295 F.Supp. 1376, 1378 (S.D.N.Y.1968).

There are no facts in this case which would impose any duty of disclosure on either France or NASCAR or any activity or inactivity on the part of either which can be made the basis of liability to the appellant as an aider and abettor of Fraley's misrepresentations to Strong.

## France and NASCAR as "Controlling Persons"

15 U.S.C. § 78t(a) provides:

"(a) Every person who, directly or indirectly controls any person liable under any provision of this title * * * or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

This section has been held to require "only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." See Myzel v. Fields, 386 F.2d 718, 738 (8 Cir. 1967) cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). This circuit has held that the test of liability is that "the controlling person ' * * * must have acted in bad faith and directly or indirectly induced the conduct constituting a violation or cause of action.'" Hecht v. Harris, Upham and Co., 430 F.2d 1202, 1210 (9 Cir. 1970) quoting Kamen v. Paul H. Aschkar and Company, 382 F.2d 689, 697 (9 Cir. 1967) cert. denied 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85.

Appellant relies upon the facts already recited to establish France's and NASCAR's liability as controlling persons. Those facts do not support appellant's conclusion. There is no evidence that either France or NASCAR acted in bad faith or directly or indirectly induced Fraley's conduct toward the appellant. Finally, it is clear that appellant made substantial payments to Fraley, some of which she seeks to recover in this action, prior to the Sportscaster venture and

14. Appellant argues that France and NASCAR stood to make a potential profit of $32,000 on the Daytona contract. Using the figures in the "promotional material" and the NASCAR-Sportscaster contract for the Daytona race, the maximum profit potential from that race would have been $1,000 to France and NASCAR. Plf. Ex. No. 16 France dep.

agreed to advance money "as needed" prior to Fraley's representation that France and NASCAR would also invest heavily in the venture. There is no evidence that France or NASCAR authorized any of the misrepresentations made by Fraley to appellant or that in continuing to provide funds she relied upon any actual conduct of either France or NASCAR.

From a review of all of the affidavits, answers to interrogatories, depositions and exhibits we conclude that the trial judge was correct in finding that "the acts attributed" to appellees "are so remote from the (appellant) that no genuine issue as to any material fact exists which would support liability as to them."

Affirmed.