Richard V. CLEARY, et al.,
Plaintiffs, Appellants,

v.

PERFECTUNE, INC., et al.,
Defendants, Appellees.

No. 82–1250.

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1982.
Decided Feb. 28, 1983.

William M. O'Brien, Boston, Mass., with whom Paul G. Counihan, Boston, Mass., was on brief, for plaintiffs, appellants.

* Of the Sixth Circuit, sitting by designation.

Christopher P. Sullivan, Boston, Mass., with whom Stephen G. Dietrick, Carolan & Sullivan, and John J. O'Brien, Boston, Mass., were on brief, for defendants, appellees.

Before PECK,* Senior Circuit Judge, CAMPBELL and BREYER, Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

Richard V. Cleary and Thomas J. Cleary ("plaintiffs") appeal the district court's grant of summary judgment to John Mitchell, William Sheskey, and James F. Higgins ("defendants") on plaintiffs' action to recover damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, and § 17(a) of the. Securities Act of 1933, 15 U.S.C. § 77q(a). Plaintiffs alleged that the defendants were liable as aiders and abettors because they failed to inform the Securities and Exchange Commission, the Massachusetts authorities or the plaintiffs that they had not consented to be listed as directors of Perfectune, Inc. ("Perfectune") in the Offering Memorandum for Perfectune when they discovered they had been so listed. The district court granted summary judgment based on its holdings that § 17(a) does not provide a private right of action and that plaintiffs failed to establish any basis for imposing aider and abettor liability under § 10(b) or rule 10b–5 in this case. Although we do not reach the question of whether § 17(a) affords a private right of action for damages, we affirm the judgment of the district court because we find that in this case there is no basis for imposing liability on the defendants as aiders and abettors under either § 10(b) and rule 10b–5 or § 17(a).

I

In January, 1976, John W. McHugh, the promoter of Perfectune, gave the plaintiffs an Offering Memorandum for Perfectune, a proposed chain of automobile tune-up centers. In March, 1976 plaintiffs purchased

550 shares of stock in Perfectune for $11,000.00.

In the Offering Memorandum, which was dated January 3, 1976, as well as in the Articles of Organization for Perfectune filed with the Commonwealth of Massachusetts, McHugh listed the defendants as directors of Perfectune without their knowledge or consent. None of the defendants signed the Offering Memorandum or participated in drafting, issuing or disseminating it. The defendants, however, were aware that McHugh was promoting Perfectune. In September, 1975, Sheskey and Higgins each made personal loans of $2,000.00 to McHugh. The debts later were converted into equity investments in Perfectune. Mitchell also provided $2,000.00 to McHugh to cover the initial costs of the Perfectune venture but he always treated this advance as an equity investment.

In January, 1976 each defendant received a copy of the Perfectune Offering Memorandum. At no time did any of the defendants object to being listed as a director. Moreover, no defendant informed the Securities and Exchange Commission, the Massachusetts authorities, or the plaintiffs that they had been listed as directors without their consent or knowledge. The defendants contend, and the district court implicitly found, that they assumed positions as outside directors of Perfectune. The plaintiffs deny that defendants ever became directors, although they concede that the defendants attended a Perfectune directors meeting that was held in July, 1976.

In September or October, 1976 a Perfectune tune-up center opened for business in Quincy, Massachusetts. The venture was not successful. In August, 1978 the Internal Revenue Service conducted a tax sale of Perfectune's assets.

In February, 1979 plaintiffs filed suit in the United States District Court for the District of Massachusetts to recover the purchase price of the Perfectune stock. The plaintiffs alleged that McHugh violated the securities laws by, among other things, preparing, issuing and disseminating a fraudulent Offering Memorandum. The plaintiffs also alleged that the defendants were liable as aiders and abettors of McHugh's violations. In the district court plaintiffs contended that the defendants had a duty to inform the Securities and Exchange Commission, the Massachusetts authorities or the plaintiffs that they were not directors of Perfectune and had not consented to be so listed in the Offering Memorandum. The plaintiffs then argued that as a result of the breach of this duty liability for aiding and abetting could be imposed on the defendants.

Although the district court denied McHugh's motion for summary judgment, it granted summary judgment for the defendants in an order on November 19, 1981. The district court held that the defendants were not liable to the plaintiffs as aiders and abettors under § 10(b) and rule 10b–5 because the plaintiffs failed to raise genuine questions of material fact concerning the elements of such liability. The district court also held that aiding and abetting liability could not be imposed under § 17(a) on the ground that no private right of action for damages exists under § 17(a). McHugh has been adjudged a bankrupt and discharged. Perfectune, which was defaulted, has no assets. On appeal the plaintiffs contend that both holdings of the district court with respect to the defendants were erroneous.

## II

Plaintiffs contend that the defendants are liable as aiders and abettors under § 10(b) and rule 10b–5 because the defendants, who as investors stood to benefit from additional investment from third parties, failed to inform the Securities and Exchange Commission, the Massachusetts authorities or the plaintiffs that they were not directors at the time the Offering Memorandum for Perfectune was prepared, issued and disseminated. The inaction and silence of the defendants is the sole basis on which the plaintiffs attempt to ground the defendants' aiding and abetting liability.

The test to be applied to determine whether a defendant is liable as an aider and abettor of a violation of § 10(b) or rule 10b–5 is now well-settled. To establish liability a plaintiff must prove:

(1) the commission of a violation of § 10(b) or rule 10b–5 by the primary party;

(2) the defendant's general awareness that his role was part of an overall activity that is improper; and

(3) knowing and substantial assistance of the primary violation by the defendant. *Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–97 (5th Cir.1975); *SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139, 162–63 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). *See generally* Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U.Pa. L.Rev. 597, 627–38 (1972). Application of the above-stated tripartite test to this case confirms the correctness of the district court's holding that liability cannot be imposed on the defendants for aiding and abetting violations of § 10(b) or rule 10b–5.

*Primary Violations*

The plaintiffs alleged that McHugh committed a variety of violations of § 10(b) and rule 10b–5. The alleged misrepresentation of the defendants as directors of Perfectune in the Offering Memorandum is the sole link between the defendants and McHugh's violations. Whether the listing of the defendants as directors in the Offering Memorandum by McHugh violated § 10(b) and rule 10b–5 is a question that is contested by the affidavits filed in this case. The plaintiffs' affidavit has raised as genuine questions whether the listing was a misrepresentation; whether it was material; whether it was in connection with the sale of securities; and whether the plaintiffs relied on the misrepresentation, and if so, what was the extent of that reliance. Because genuine questions of material fact were raised by the plaintiffs concerning the commission of a violation of § 10(b) and rule 10b–5, we must turn to the remaining elements of the test.

*Awareness of Role in an Improper Activity*

Courts generally have held that in the absence of a duty of disclosure, a defendant should be held liable as an aider and abettor only if the plaintiff proves that the defendant had actual knowledge of the improper activity of the primary violator and of his role in that activity. *Woodward v. Metro Bank of Dallas,* 522 F.2d at 96; *SEC v. Coffey,* 493 F.2d at 1316–17; *IIT v. Cornfeld,* 619 F.2d at 923; Ruder, *supra,* at 630–31. Where the defendant has a duty to disclose the primary violations, however, courts have been willing to impose liability on the basis of a recklessness standard, *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir. 1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980), or on a lesser showing of actual awareness than is otherwise required, *SEC v. Washington County Utility District,* 676 F.2d 218, 226 (6th Cir. 1982).

Among the situations in which a duty to disclose may arise are where the defendant possesses insider information, *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848–49 (2d Cir.1968) (en banc), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); where a controlling person consents to and approves of the fraudulent practices, *Strong v. France,* 474 F.2d 747, 752 (9th Cir.1973); or where the law imposes special obligations, as for accountants and brokers, *Woodward v. Metro Bank of Dallas,* 522 F.2d at 95–96.

In this case no facts are present which would impose a duty of disclosure on the defendants. Factually, this case is similar to that presented in *Strong v. France, supra.* In *Strong* the promoter of Sportscaster, Inc., Oscar Fraley, contracted with William France, president of the National

Association for Stock Car Auto Racing, Inc. (NASCAR), and with NASCAR to provide radio sportscasting services at NASCAR events. France agreed to be a director of Sportscaster once the corporation became a going venture, although there was no evidence that France ever became or operated as a director. Fraley represented to an investor, Sarame Reynolds Strong, that France and NASCAR had agreed to promote, support and heavily invest in Sportscaster. Although these comments were made without France's or NASCAR's knowledge or authorization, France did issue a letter, addressed "To Whom it May Concern", strongly endorsing Fraley. The court held that France and NASCAR had no duty of disclosure in these circumstances and that they could not be held as aiders and abettors of Fraley's alleged violations of § 10(b) and rule 10b–5. The defendants in this case did not associate themselves with the purported misrepresentations of McHugh as closely as France and NASCAR associated themselves with Fraley's misrepresentations because there is no evidence that the defendants ever made independent representations endorsing the Perfectune venture. Because of the absence of association of the defendants with McHugh, as well as the absence of any pre-existing relationship between the plaintiffs and the defendants, there is no basis in the instant case for imposing a duty of disclosure on the defendants.

■ The plaintiffs have failed to offer any indication that the defendants had any actual awareness of the impropriety of McHugh's activity or even that their conduct was in some way reckless. The defendants' affidavits contain evidence of their lack of awareness of the impropriety of McHugh's activity and of the use by McHugh of the representation that the defendants were directors in promoting investment. As the district court properly found, the plaintiffs' affidavit fails to present any facts to support contrary inferences; rather, the plaintiffs' affidavit documents only plaintiffs' lack of knowledge, not the existence of any awareness or knowledge on the part of the defendants.

Although the plaintiffs' complaint alleges the defendants' knowledge of McHugh's misconduct, the allegations of a complaint do not constitute substantial evidence that raises a genuine issue of material fact. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Because of the absence of genuine questions of material fact concerning the issue of the defendants' awareness of their role in McHugh's allegedly improper activity, summary judgment for the defendants on this ground was proper. Fed.R.Civ.P. 56(c).

*Knowing and Substantial Assistance*

Courts are not in agreement as to the standard to be applied to determine whether inaction, such as the failure of the defendants in this case to inform anyone that they were not directors at the time the Offering Memorandum was issued, can constitute knowing and substantial assistance of the primary violation. Several courts have suggested that absent an independent duty to act, inaction cannot constitute the assistance necessary to support the imposition of liability for aiding and abetting. *Wessel v. Buhler,* 437 F.2d 279, 283 (9th Cir.1971); *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d at 161–62. *Cf. IIT v. Cornfeld,* 619 F.2d at 927 ("[I]naction can create aider and abettor liability only when there is a conscious or reckless violation of an independent duty to act."). Other courts have held that in the absence of an independent duty to act mere inaction will constitute substantial assistance only where there was a conscious intention to further the principal violation. *Woodward v. Metro Bank of Dallas,* 522 F.2d at 96–97; *SEC v. Coffey,* 493 F.2d at 1317.

■ We need not determine which standard should be applied in this case because it is clear that the plaintiffs' affidavits fail to present sufficient evidence to raise as a genuine question whether the defendants consciously intended to further McHugh's allegedly fraudulent scheme. *Brennan v. Midwestern United Life Insurance Co.,* 259

F.Supp. 673 (N.D.Ind.1966), 286 F.Supp. 702 (N.D.Ind.1968), aff'd, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), does not dictate a contrary result. In *Brennan* the Seventh Circuit, upon finding that the defendant knew of the fraudulent activity and did not expose it in order to benefit itself, affirmed the imposition of liability as an aider and abettor for inaction "combined with [defendant's] affirmative acts." 417 F.2d at 154. In this case, not only did plaintiffs fail to identify any affirmative acts for which defendants might be liable, they failed to produce any evidence from which it might be inferred that defendants' inaction was consciously intended to further McHugh's allegedly fraudulent activity. For these reasons, the district court's grant of summary judgment for defendants on the ground that they did not knowingly and substantially assist any primary violation was proper.

## III

The district court granted summary judgment for the defendants with respect to aiding and abetting a violation of § 17(a) on the ground that no private right of action for damages exists under § 17(a). The district courts of this circuit that have considered this question have also held that such a private right of action does not exist. *E.g., Kaufman v. Magid,* 539 F.Supp. 1088, 1097–98 (D.Mass.1982); *Manchester Bank v. Connecticut Bank & Trust Co.,* 497 F.Supp. 1304, 1314 (D.N.H.1980); *Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 903–05 (D.Me.1971). We decline, however, to base our decision on this ground which is the subject of substantial dispute and on which the circuits are split. *Compare Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808 (9th Cir.1981) (holding that § 17(a) supports a private right of action) *and Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) (same) *and Newman v. Prior,* 518 F.2d 97 (4th Cir.1975) (same) *and Surowitz v. Hilton Hotels Corp.,* 342 F.2d 596 (7th Cir.1965), *rev'd on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (same) *with Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982) (holding that § 17(a) does not support a private right of action) *and Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir.1967) (same). The Supreme Court has declined to decide the issue. *Herman & MacLean v. Huddleston,* —— U.S. ——, —— n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983). We hold that, even were we to follow the courts that allow such an action, on the appropriate standard to be applied to determine liability of aiders and abettors of violations of § 17(a), the defendants were entitled to summary judgment.

The standards to be applied in a case of aiding and abetting a violation of § 17(a) are less well-settled than those applied in cases involving a violation of § 10(b) and rule 10b–5. Several courts, without analysis, have applied a single standard where the defendants were alleged to have violated § 10(b), rule 10b–5 and § 17(a): the tripartite test applied in cases involving § 10(b) and rule 10b–5 violations. *SEC v. Washington County Utility District, supra; Edwards & Hanly v. Wells Fargo Securities Clearance Corp., supra; SEC v. Coffey, supra.* The plaintiffs, however, suggest that a single standard is inappropriate at least to the extent that McHugh's activity violated §§ 17(a)(2) & (3), because the nature of intent or the state of mind required for primary violations of § 10(b), rule 10b–5 and § 17(a)(1) differs from that required for violations of §§ 17(a)(2) & 17(a)(3).

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court held that scienter is a necessary element of a cause of action under § 10(b) and rule 10b–5. In *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), the Court, after finding that the language of § 17(a)(2) and of § 17(a)(3) differs significantly from that of § 10(b) and of § 17(a)(1), held that scienter is not required for a cause of action to exist under § 17(a)(2) or § 17(a)(3). Plaintiffs contend that just as in the case of a pri-

mary violation of § 17(a)(2) or § 17(a)(3), scienter should not be required for liability as an aider and abettor of a violation of those statutes. We do not agree.

Aider and abettor liability, unlike primary liability, under §§ 17(a)(2) & (3) "does not flow directly from the statute." *Decker v. SEC,* 631 F.2d 1380, 1387 (10th Cir. 1980) (quoting *Investors Research Corp. v. SEC,* 628 F.2d 168, 177 (D.C.Cir.1980)). Because of the absence of dispositive statutory language or legislative history, the standards to be applied should be based on policy considerations. *Aaron v. SEC,* 446 U.S. at 700 n. 19, 100 S.Ct. at 1957 n. 19; *Ernst & Ernst v. Hochfelder,* 425 U.S. at 214 n. 33, 96 S.Ct. at 1391 n. 33. In *Decker v. SEC, supra,* the court applied the tripartite test usually applied in cases of aiding and abetting § 10(b) violations in a case involving aiding and abetting a violation of § 17(e)(1) of the Investment Company Act of 1940, 15 U.S.C. § 80a–17(e)(1), a primary violation of which does not require scienter. 631 F.2d at 1387. Imposition of the tripartite test was justified as "designed to insure that innocent, incidental participants in transactions later found to be illegal are not subjected to harsh, civil, criminal, or administrative penalties." *Id.* at 1388 (quoting *Investors Research Corp. v. SEC,* 628 F.2d at 177). *See* Ruder, *supra,* at 632–33. This justification is as applicable to cases involving the alleged aiding and abetting of violations of § 17(a) as to those of § 17(e)(1) of the Investment Company Act of 1940. For the reasons outlined in Section II, the defendants were entitled to summary judgment with respect to the allegations that they aided and abetted violations of § 17(a). We do not hold that there is a private right of action under § 17(a); we need not reach that question because even if there were such a right, the plaintiffs have failed to show that they should benefit from it.

For the above reasons, the judgment of the district court is affirmed.