Warren **SPRAYREGEN** et al., Plaintiffs,

v.

**LIVINGSTON OIL COMPANY,** Julius Livingston, Wayne E. Swearengen, Irving H. Mages, Peat, Marwick, Mitchell & Co. and DeWitt Conklin Organization, Inc., Defendants.

No. 66 Civ. 3051.

United States District Court
S. D. New York.

Sept. 23, 1968.

Ballon, Stoll & Shyman, New York City, for plaintiffs; Ronald S. Itzler, Myron D. Vogel, New York City, of counsel.

Golden, Wienshienk & Mandel, New York City, for defendant Irving H. Mages; Ralph Wienshienk, New York City, Arvey, Hodes & Mantynband, Chicago, Ill., Sidney Sosin, Chicago, Ill., of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Livingston Oil Co.; Charles Pickett, Edward C. McLean, Jr., Howard S. Sussman, New York City, of counsel.

White & Case, New York City, for defendant Peat, Marwick, Mitchell & Co., Thomas Kiernan, Stephen W. Stein, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant Julius Livingston; Ralph M. Carson, Phillip C. Poller, Jr., Thomas P. Griesa, Rathheim, Abrams, Hoffman & Kassel, New York City, of counsel.

## MEMORANDUM

FREDERICK van PELT BRYAN, District Judge:

This is an action by Sprayregen and other stockholders of Livingston Oil Company (the Company) against that corporation; three directors, Julius Livingston, Wayne E. Swearengen, and Irving Mages; the accounting firm of Peat, Marwick, Mitchell & Co. (Peat); and DeWitt Conklin Organization, Inc. (DeWitt), a public relations firm.

Plaintiffs allege five claims for relief which arise out of the same facts. The First is based upon Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j) and Rule 10(b) (5) of the Rules and Regulations of the Securities and Exchange Commission. The Second, Third and Fourth claims arise under New York common law and allege fraud, negligence and conspiracy. The Fifth is based upon Section 352–c of the New York General Business Law, McKinney's Consol.Laws, c. 20. Pendant jurisdiction is asserted over the nonfederal counts.

Defendants move under Rule 12(c) and Rule 12(b) (6), F.R.Civ.P., to dismiss for failure to state a claim upon which relief can be granted, or for judgment on the pleadings. They also move to dismiss the "Second" through "Fifth" counts for want of subject matter jurisdiction, Rule 12(b) (1), F.R.C.P. Defendant Mages further moves pursuant to Rule 12(b) (2) and (5) to dismiss the Second through Fifth counts or, in the alternative to quash service on these counts on the ground that the court lacks personal jurisdiction over him.

The complaint alleges the following:

Livingston and Swearengen, "with the consent and approval of Mages," delivered a speech in New York City on or about February 12, 1965, before the New York Society of Security Analysts. The purpose was to induce securities dealers to promote the sale of the Company's stock. The speech estimated that the Company's total income for the years 1964–1965 would exceed ten million dollars, cash flow would approximate six million dollars and net income would be $3,500,000 or about double the income for the first six months. The net income prediction was subject to reduction in case of acquisitions. The figures upon which these predictions were based were prepared by and presented to Livingston and Swearengen by defendant Peat.

Defendants "knowingly and intentionally, with intent to deceive" failed to disclose in the speech that Peat had underestimated the provision for depletion and depreciation for the first six months of the fiscal year 1964–1965 and that as a result the Company showed greatly reduced rather than greatly increased net profits, as had been predicted and the cash flow was significantly reduced rather than improved.

The publication, on April 23, 1965, of the Nine Month Report with the actual figures precipitated a drop in the market price of the stock. During the period between February 12, 1965 and April 23, 1965, plaintiffs "purchased and/or failed to sell, the shares of the Corporation's common stock, as the case may be" in reliance on the predictions made in the February 12, 1965 speech.

DeWitt, a public relations firm, was employed by the Company to distribute copies of the speech to shareholders and others in order to induce them to retain and encourage them to purchase shares.

■ In order to state a good claim under Rule 10(b) (5), it is not necessary to allege that defendants made the misleading statements in conjunction with efforts to enhance their own positions in the securities market. As the Court of Appeals has just announced:

"* * * it seems clear from the legislative purpose Congress expressed in the Act, and the legislative history of Section 10(b) that Congress when it used the phrase 'in connection with the purchase or sale of any security' intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities. There is no indication that Congress intended that the corporations or persons responsible for the issuance of a misleading statement would not violate the section unless they engaged in related securities transactions or otherwise acted with wrongful motives; indeed, the obvious purposes of the Act to protect the investing public and to secure fair dealing in the securities markets would be seriously undermined by applying such a gloss onto the legislative language." S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. August 13, 1968).

■ Accordingly, in order to meet the "in connection with the purchase or sale of any security" requirement of Rule 10 (b) (5) it is sufficient merely that plaintiff was either a purchaser or a seller and became such in reliance upon defendants' misrepresentation.

■ In pleading the "in connection with" element plaintiffs have somewhat ambiguously alleged that they "purchased and/or failed to sell, the shares of the Corporation's common stock" in reliance on the false financial figures. While the mere retention of shares may not meet the requirement that there at least be a purchase or sale, this allegation is not fatally defective. Clearly, plaintiffs have alleged in the alternative that they were vendees. This is all that the Federal Rules require. "When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Rule 8(e) (2), F.R.C.P.

Defendant Mages urges further that the complaint is fatally defective as to him because it does not charge him with delivering the February 12th speech; instead it alleges that the speech was delivered by Livingston and Swearengen "with [his] consent and approval."

■■ Essentially Mages' position is that he is charged with less than active participation and as such he is not liable under 10(b) (5). This is an attempt to elevate form above substance. Liability under remedial rules such as 10(b) (5) should not be denied when it is clearly alleged that defendant insider has played an integral role in the fraud charged. There is no basis either in the words or purpose of the Rule or in the developing case law for the conclusion that a director who consents to and approves of the fraudulent practices of his fellow directors should be treated differently. Such an allegation patently charges active wrongdoing. He is himself chargeable with fraud and liable under Rule 10(b) (5) if the other essential allegations are properly pleaded.

Since plaintiffs have stated a good claim under Rule 10(b) (5) this court has pendant jurisdiction to adjudicate the related state claims. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

■ Finally, there remains defendant Mages' contention that the court lacks personal jurisdiction as to him with respect to the Second through Fifth counts. The contention is based on the fact that Mages was served extraterritorially in the Northern District of Illinois pursuant to the grant of authority in Section 27 of the Securities and Exchange Act of 1934 and not in this District. While Mages concedes that if the plaintiffs have stated a good claim under Rule 10 (b) (5), the court has pendant subject matter jurisdiction to determine the claims based on state law, he nevertheless asserts that in order for the court to acquire personal jurisdiction as to the nonfederal claims there must also be service of process under Rule 4(f) within the territorial limits of the state in which the District Court sits. Since such service is lacking here the claim is that there is lack of personal jurisdiction to determine the state based claims.

While there is a split of authority on this question in this and other courts, see International Ladies' Garment Workers' Union v. Shields & Company, 209 F. Supp. 145 (S.D.N.Y.1962), the better reasoned decisions support pendant personal jurisdiction in such circumstances. As stated by Judge Weinfeld: " * * * the better view appears to be that considerations of judicial economy and convenience of the parties which underlie the pendant jurisdiction doctrine require that extraterritorial service also be sustained as to the nonfederal pendant claims." Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 568 (S.D.N.Y.1964). See also Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959).

Defendants' motions are in all respects denied.

It is so ordered.