**Robert C. and Shirley A. HUDSON, and David Blechman, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CAPITAL MANAGEMENT INTERNATIONAL, INC., et al., Defendants.**

**No. C–81–1737–MHP.**

United States District Court, N.D. California.

May 25, 1983.

As Amended June 7, 1983.

---

David B. Gold, Paul F. Bennett, George Donaldson, and Godfrey L. Munter, Jr., Martin & Munter, San Francisco, Cal., for Hudsons.

Max W. Berger, Gene Kleinhendler, Kreindler & Kreindler, New York City, for Bernstein, Seawell and Kove.

M. Laurence Popofsky, Scott Fink, Lawrence W. Keeshan, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for Price Waterhouse & Co.

David Henshaw, James Gansinger, Jones, Bell, Simpson, Gansinger & Abbott, Los Angeles, Cal., for First Affiliated Secs., Birr Wilson & Co. and Independent Fin. Planners.

Douglas B. Hughmaneck, Paul Dawes, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for Bronson, Bronson & McKinnon, Thomas Byrne Swartz and Thomas Swartz.

William F. Campbell, Benjamin H. Parkinson, Jr., Ackerman, Johnston, Campbell & Parkinson, San Francisco, Cal., for Robert Adler.

Jackson L. Morris, in pro. per.

Eldon Olson, Price Waterhouse & Co., New York City, Jerry K. Cimmet, San Francisco, Cal., for Wallace Vickery.

Dennis K. Bromley, Pillsbury, Madison & Sutro, San Francisco, Cal., Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., for Arthur Andersen & Co.

Theodore W. Rosenak, Archer, Rosenak & Hanson, San Francisco, Cal., for Simon Adler, Alfred Avery, Dene Orndorf Collins, Shirley Denes, Joseph Bradford Giordano, John Schweiger, Emery Sims, Dan W. Ward, John Adams, Geo. Hochswender, George Wood, Mary Fritze, C. Wm. Ford, M. Fritze, John King, Donald J. Sedam, Jonathan Tobey, Wallace Vikery and Magdy Shebbein.

Ernest J. Getto, Joan T. Hood, Latham & Watkins, Los Angeles, Cal., for Advest, Inc. and Irell & Manella.

Barry L. Bunshoft, Patrick A. Cathcart, Hancock, Rothert & Bunshoft, San Francisco, Cal., for Irell & Manella.

Dale Fredericks, Tod L. Gamlen, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for May, Zima & Co.

Steven A. Lewis, Howard M. Garfield, Long & Levit, San Francisco, Cal., for Cherry, Bekaert & Holland.

Nelson C. Barry, Nannette de Lara, G. Kelly Reid, Jr., Bishop, Barry, Howe & Reid, San Francisco, Cal., for Lowenstein, Brause & Hirsch.

Alvin M. Stein, Parker, Chapin, Flattau & Klimpl, New York City, John S. Martel, Douglas Young, Farella, Braun & Martel, San Francisco, Cal., for Alexander Grant & Co.

Sherwin J. Markman, John R. Gerstein, Hogan & Hartson, Washington, D.C., for Robert M. Adler.

George A. Yuhas, Ronald G. Aronovsky, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for Xavier J. Wohner.

Law Offices of Marvyn Gordon, Los Angeles, Cal., for Meyer C. Heller.

Peter B. Atwood, Atwood & Richmond, Boca Raton, Fla., for First Fla. Securities, Inc.

Donald J. Yellon, San Francisco, Cal., for Clariden Bank; Donald Cronson, Geneva, Switzerland, of counsel.

James M. Gansinger, Alan B. Pick, Gansinger & Pick, Los Angeles, Cal., for Independent Fin. Plng. Corp.

Theodore A. Russell, Pettit & Martin, San Francisco, Cal., for Robert Long and Jonathan S. Tobey.

Peter J. Busch, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., and Michael Nussbaum, Kate A. Martin, Nussbaum, Owen & Webster, Washington, D.C., for Stiller, Adler & Schwartz and Stiller, Schwartz & Kaswell.

## OPINION

PATEL, District Judge.

### INTRODUCTION

This action is brought pursuant to the Securities and Exchange Acts of 1933 and 1934, 15 U.S. §§ 77a–77bbbb, 15 U.S.C. §§ 78a–78kk, and state law. Plaintiffs Blechman and Robert and Shirley Hudson invested in limited partnerships entitled Delta Greenhouse, Ltd. and California Flowerland '79, respectively. Plaintiffs allege that these limited partnerships were sold as part of a complex fraudulent scheme spanning a period from approximately 1973 to 1980 involving sales of interests in forty-five Flowerland limited partnerships to more than 2,300 investors. Marketed primarily as tax shelters, interests in the partnerships were offered in three series through approximately fifty-nine offering circulars. First, six "cultivating" partnerships, which were to grow foliage products on their own property, were offered. Next, five "equipment-leasing" partnerships, which were to lease horticultural equipment to other Flowerland partnerships, were offered. Finally, between 1976 and 1980, the "distributing" partnerships, which were to buy immature plants, contract with growers to raise them to maturity and then distribute them, were offered through both private placements and intrastate offerings.

Plaintiffs charge that the offering circulars and other documents provided to investors containing various tax opinions, tax returns and financial statements, promised immediate tax deductions in excess of cash contributions and future returns on capital which could not be achieved, and misrepresented the partnerships' actual method of operation. For example, plaintiffs claim that Island Foliage, an entity which acted as "middleman" between some of the limited partnerships and various plant growers, was in fact owned and controlled by defendant Edward Heller, but represented variously as independently owned or closely affiliated, or not mentioned at all. Plaintiffs contend that this information was material to the sales. Plaintiffs further allege that the ostensibly independent offerings of the limited partnership interests were in fact one continuous offering of securities which should have been registered with the Securities and Exchange Commission, but was not.

Plaintiffs have named 128 defendants,[1] including forty-three individuals who were officers and directors of the many different partnerships and related companies, four law and seven accounting firms who prepared tax opinions and financial statements for the partnerships and five broker-dealers who participated in the marketing. The cast of characters involved in each Flowerland entity and each offering varied dramatically. For example, of the forty-three individual officer and director defendants, only two were allegedly involved in the Flowerland operation throughout the period charged. Similarly, the attorneys' participation ranged from one firm's preparation of tax opinions appearing in forty-three of the fifty-nine offering circulars to another's preparation of only one tax opinion for one offering. Despite these and other variations in defendants' roles and levels of participation, plaintiffs alleged initially that each of the defendants was liable for the entire fraud. Two previous memorandum opinions have addressed the adequacy of the pleadings and narrowed the issues somewhat.

This opinion addresses defendants' motions to dismiss the third amended com-

---

1. There is no active prosecution of the litigation as to certain defendants, including the partnerships. This is due, in part, to other pending litigation in which a stay has been ordered. However, there are active claims in this suit against more than sixty defendants.

plaint and plaintiffs' motions to certify plaintiff and defendant classes. The court has considered the voluminous briefs of counsel. The motions are granted in part and denied in part, as set forth below. The court has also reconsidered its ruling on § 17(a) of the 1933 Act, 15 U.S.C. §§ 77q(a)(2), (3). The opinion is organized as follows: Part I, failure to allege transactional nexus, substantial assistance and actual knowledge of the fraud as to § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b); Part II, lack of specific allegations as to certain individuals; Part III, absence of a private right of action under § 17(a) of the 1933 Act; Part IV, inadequate allegations of seller status under § 12 of the 1933 Act, 15 U.S.C. § 77*l*; Part V, insufficient allegations of control status under § 15 of the 1933 Act, 15 U.S.C. § 77*o,* and § 20 of the 1934 Act, 15 U.S.C. § 78t; Part VI, failure to state a claim and lack of jurisdiction as to the pendent claims; Part VII, miscellaneous motions to dismiss not covered elsewhere; and Part VIII, class certification motions.

## I. § 10(b) Claims

### A. *Professional and Underwriting Defendants*

In their third amended complaint, pursuant to the court's previous opinion issued August 24, 1982 ("Opinion"), plaintiffs have finally alleged from whom they purchased their investments and what information about those investments they received prior to purchase. The Hudsons now allege that on December 28, 1979 they purchased 10 units in California Flowerland '79 through Independent Financial Planners ("IFP") by making one payment immediately and executing a promissory note on which they made an additional payment on March 31, 1980. Prior to December 28, 1979, the Hudsons allege they received from IFP, read and relied upon the Offering Circular for California Flowerland '79, which included the tax opinion of Bronson, Bronson and McKinnon ("Bronson") and the financial statements and notes of Alexander Grant ("Grant"). They also claim that they "most

likely" received the Subscription Agreement and Signature Page for the Limited Partnership Agreement. Further, they allege that Estates, under the direction of King, Smith and Holmes, supervised the sales activities of IFP and that the issuer was the Flowerland Limited Partnerships and Flowerland entities. After their initial purchase but prior to the March payment, the Hudsons allege they received various letters from California Flowerland '79. Also, at some date of which they are "uncertain," they received and read the tax return for California Flowerland '79 prepared by Bronson for the year ending December 31, 1979. They received no other information in connection with their investment.

Blechman allegedly purchased a limited partnership interest in Delta Greenhouse, Ltd. on December 21, 1976 with a one-time payment. Prior to his purchase, he read the offering circular which contained the tax opinion of Robert Adler and Stiller, Adler and Schwartz dated December 3, 1976. The issuer was the Flowerland limited partnerships and entities. He received no other information prior to his purchase.

The attorney, accounting and underwriting defendants, other than those specifically named in the allegations outlined above, move to dismiss the § 10(b) claims on two related grounds: (1) failure to allege a transactional nexus with the purchases of the named plaintiffs; and (2) failure to allege substantial assistance to the fraud. This court previously ruled that plaintiffs must plead what allegedly deceptive information they had access to in order to demonstrate the requisite transactional nexus with the alleged fraud. *See Williams v. Sinclair,* 529 F.2d 1383, 1389 (9th Cir.1976), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). The court further stated that if plaintiffs claim that they relied on a third party who in turn had access to the deceptive materials, plaintiffs must plead that connection because the open market presumption of causation would not apply to the private transactions here. *See Keirnan v. Homeland, Inc.,* 611 F.2d 785, 790 (9th Cir.1980); *cf. Blackie v. Barrack,*

524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

■ Plaintiffs had ample notice of what they must plead to establish a transactional nexus. Plaintiffs did not plead reliance on any third parties who had access to deceptive materials which plaintiffs did not themselves see.[2] They made adequate allegations with respect to only a handful of defendants: as to the Hudsons, Bronson[3], Grant, IFP, Estates, King, Smith, Holmes and the Flowerland Limited Partnerships and Entities; as to Blechman, Adler and Stiller, Adler & Schwartz[4], Estates and the Flowerland Limited Partnerships and Entities. Therefore, as to all other professional and underwriting defendants the § 10(b) claims are dismissed as more fully explained below.

■ Plaintiffs nonetheless argue that they satisfy the transactional nexus requirement as to all other defendants by their general allegation of a "concerted scheme." This court previously dismissed with prejudice all claims based on conspiracy because defendants had made only broad-brush, conclusory allegations of agreement. Plaintiffs cannot now resurrect their conspiracy theory through similarly broad-brush allegations of a "concert-ed scheme," devoid even of the claim that defendant agreed to the fraud. This is simply their conspiracy theory under a different name. The transactional nexus requirement is a species of causation requirement. Consistent with § 10(b)'s "in connection with" limitation on liability, it prohibits claims based on the extremely attenuated links between plaintiff's injury and defendants' conduct alleged here. Accordingly, the § 10(b) claims against the attorney, accounting and underwriting defendants, other than the handful against whom the allegations were specifically found above to be adequate, are dismissed with prejudice for failure to plead a transactional nexus.

■ As an alternative ground for dismissal, the same professional and underwriting defendants also argue that plaintiffs have failed to plead substantial assistance to the fraud as required for aiding and abetting liability under § 10(b). The elements of aider liability are: "(1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." *Harmsen v. Smith,* 693 F.2d 932 (9th Cir.1982). The substantial assistance element is another form of causa-

---

**2.** Plaintiffs argue in their opposition with respect to another issue that financial statements prepared by a number of other defendants for other Flowerland partnerships were contained in the "due diligence" report for California Flowerland '79 provided to IFP by Estates. This was not pled in the complaint. Moreover, the Hudsons did not plead that they relied on IFP in making their investment decision. Accordingly, plaintiffs have not pled reliance on third parties with access to deceptive material to support a transactional nexus with these other defendants.

**3.** The allegation that Bronson's tax opinion appeared in the Offering Circular for California Flowerland '79 establishes the requisite transactional nexus as to Bronson. The additional allegation that the Hudsons received a tax return prepared by Bronson at an "uncertain" date adds nothing. This court previously ruled that a defendant cannot be liable to plaintiffs for services performed after plaintiffs' investments, because one cannot assist a fraud that has already occurred. Thus, plaintiffs were on notice that they must plead actions by defendants occurring prior to the Hudsons' purchase.

Tax returns received after investments are made are not "in connection with" those investments. *Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1086 (N.D.Cal. 1979). Even assuming that the installment payment on March 1, 1980 constituted a purchase or sale of a security (a question of fact not appropriate for determination on a motion to dismiss, *see Lewelling v. First California Co.,* 564 F.2d 1277, 1280 (9th Cir.1977); *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 812–13 (9th Cir.1981)), plaintiffs have failed to allege that they received the tax return prior to that date. Vague and equivocal allegations will not suffice, particularly where, as here, plaintiffs' access to the facts is as good as defendants'. The court notes again the prior S.E.C. proceedings to which plaintiffs have had access.

**4.** This opinion addresses the allegations before it. The court makes no comment on plaintiffs' pending motion to add parties to correct the designation of the Stiller firm.

tion requirement. *Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1084 (N.D.Cal.1979).

■ Plaintiffs' theory of aider liability is, in essence, that the professional and underwriting defendants knew or were reckless in not knowing of certain aspects of the fraud and aided it by failing to disclose this information to the investing public. Defendants argue that they did not owe plaintiffs a duty to disclose any knowledge of the fraud and therefore they cannot be liable for mere failure to "whistleblow." The court agrees.[5]

Although the scope of secondary liability under § 10(b) has undergone some expansion, the weight of Ninth Circuit authority has never supported the sweeping vistas of liability which plaintiffs envision. The Ninth Circuit first considered liability for non-disclosure in *Wessel v. Buhler,* 437 F.2d 279, 283 (9th Cir.1971). Plaintiff charged that an accountant who failed to disclose his knowledge of a company's financial irregularities and inadequate records was liable as an aider. The court disagreed, stating:

> There is not a scrap of authority supporting this extraordinary theory of Rule 10b–5 liability, and we will not supply any in this case.

> We find nothing in Rule 10b–5 that purports to impose liability on anyone whose conduct consists solely of inaction.... We perceive no reason ... thus to expand Rule 10b–5 liability. On the contrary, the exposure of independent accountants and others to such vistas of liability, limited only by the ingenuity of investors and their counsel, would lead to serious mischief.

437 F.2d at 283.

In *Strong v. France,* 474 F.2d 747 (9th Cir.1973), the Ninth Circuit established a limited exception to *Wessel's* denial of liability based on nondisclosure for defendants with a duty to disclose. *Strong* set forth three methods for showing a duty to disclose:

> "An aider and abettor may be liable for damages even though his assistance of the scheme consists of mere silence or inaction." *Anderson v. Francis I. DuPont and Co.,* 291 F.Supp. 705, 709 (D.Minn. 1968). That liability arises, however, only when a duty to disclose has arisen. *Securities and Exchange Commission v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848 (2 Cir.1968) (en banc) *cert. denied* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The duty to disclose may arise upon the possession of "inside information" as in *Securities and Exchange Commission, supra;* or upon "knowing assistance of or participation in a fraudulent scheme" as in *Anderson, supra;* or upon a consent and approval of fraudulent practices by a director, as in *Sprayregen v. Livingston Oil Company,* 295 F.Supp. 1376, 1378 (S.D.N.Y.1968).

474 F.2d at 752. The Ninth Circuit recently reaffirmed the continued validity of *Strong's* analysis of aider liability. *Harmsen v. Smith,* 693 F.2d 932, 944 (9th Cir. 1982).

Two of these methods of establishing a duty to disclose do not apply to the professional and underwriting defendants in this

---

**5.** Plaintiffs also assert primary liability against some of these defendants in their complaint, although they do not argue this theory in their opposing papers. The same factual allegations which the court finds inadequate with respect to secondary liability are, *a fortiori,* inadequate with respect to primary liability.

The observation of the court in *Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1083 (N.D.Cal.1979), where plaintiffs charged an accounting firm as a principal because it provided bookkeeping and other "in-house" services for a financially unsound business, is especially apposite here:

> Plaintiffs have cited no authority in support of their novel theory that the prohibitions of 10b–5(c) were intended to embrace the activity of an independent accountant performing normal services for the purpose of furthering his own legitimate business interests.

Indeed, in this case plaintiffs have not even alleged as close a relationship between the alleged abettor professional and underwriting defendants and the alleged principals in the fraud as the plaintiffs charged in *Mendelsohn.*

case. They cannot be liable for insider trading, as in *Securities and Exchange Commission v. Texas Gulf Sulphur,* since they were not insiders. Similarly, they cannot be liable as corporate directors for consent and approval of other directors' public misrepresentations, as in *Sprayregen.* Accordingly, " 'knowing assistance of a participant in a fraudulent scheme' as in *Anderson,*" 474 F.2d at 752, is the only potentially relevant source of a duty to disclose with respect to the professional and underwriting defendants in this case. However, it also fails. Defendant's "knowing assistance" in *Anderson* went beyond mere silence to include providing the principal defrauder with office space, endorsing his skill as a commodities trader and holding him out as a valued customer. 291 F.Supp. at 709. Allegations of this kind of active assistance are conspicuously absent from the complaint in this case.

The only case cited by plaintiffs which lends any support to their broad theory of aider liability is *In re Equity Funding Corp.,* 416 F.Supp. 161, 180 (C.D.Cal.1976), which is not, of course, binding on this court. *In re Equity* may have reached the high water mark of secondary liability for professional defendants. The court did not analyze the professional defendants' duty to disclose to those who invested after they rendered their services, as required by *Strong.* Instead, the court decided that further discovery was necessary before it could rule on their motions to dismiss, stating that, unlike the *Wessel* court, 437 F.2d at 283, it did not believe that the claims before it were a product of the "ingenuity" of counsel. By contrast, the sweeping aider and abettor claims here are not entitled to such deference. This is not a case where dismissal is premature because of lack of factual development. Plaintiffs have had access for two years to the fruits of the Securities Exchange Commission's investigation of the fraud alleged here. Accord-

ingly, this court holds that plaintiffs have failed adequately to allege substantial assistance to the fraud.[6]

■ Finally, several defendants move to dismiss on the grounds that recklessness is not sufficient scienter for aiding and abetting liability under *Harmsen, supra,* 693 F.2d at 943. Since plaintiffs plead actual knowledge and recklessness in the alternative, this cannot be grounds for dismissal. Fed.R.Civ.P. 8(e)(2). To guide the future conduct of this litigation and to clarify its prior ruling in light of *Harmsen,* however, the court will briefly discuss the scienter requirement for aider liability.

■ Although recklessness suffices for primary liability, *Nelson v. Serwold,* 576 F.2d 1332 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), recklessness will not suffice for secondary liability, where defendant's role is less direct, unless defendant owes a special duty to plaintiff. *Harmsen* states the general rule that actual knowledge of the fraud and the aider's role in furthering it is required. 693 F.2d at 943. However, *Harmsen* also recognizes in its citations to *Strong,* 474 F.2d at 752, and other leading cases that recklessness will suffice for secondary liability where defendant is under a special duty to disclose based on insider status or a fiduciary or similar relationship. *Harmsen* at 945–46 & n. 10. Thus, Judge Friendly's scholarly opinion in *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980), cited repeatedly with approval by *Harmsen,* suggests that recklessness suffices only where defendant has a fiduciary or analogous relationship to plaintiff. *IIT* quoted from the leading case of *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 95, 97 (5th Cir.1975), also cited with approval by *Harmsen,* as follows:

> The activity requirement scales upwards when activity is more remote; therefore, the assistance rendered should be both

---

**6.** Plaintiffs also argue that the professional defendants should not be dismissed because the defendants who remain in the action may at some later stage of the proceedings cross-claim against those dismissed. The flaw in their ar-

gument is that the fact (if it is one) that some defendants may be liable to other defendants has no bearing on their liability to plaintiffs, which is the issue now before the court.

substantial and knowing. . . . When it is impossible to find any duty of disclosure, an alleged aider-abettor should be found liable only if scienter of the high 'conscious intent' variety can be proved. Where some special duty of disclosure exists, then liability should be possible with a lesser degree of scienter.

619 F.2d at 923, 925. *See also Morgan v. Prudential Group, Inc.,* 527 F.Supp. 957, 960 (S.D.N.Y.1981). This court finds the reasoning of these cases persuasive and consistent with the Ninth Circuit's approach in *Harmsen* and *Strong.*

B. *Individual Officer and Director Defendants*

 Certain individual defendants who were officers and directors of the Flowerland entities also move to dismiss the Hudsons' § 10(b) claims on the grounds that the allegations fail to show a transactional nexus and/or substantial assistance to the fraud. The allegations that Denes and Sims aided the fraud from 1977–79 and that Tracy aided it during 1979 are sufficient to establish involvement contemporaneous with the Hudson's purchase for purposes of a defeating motion to dismiss. The allegations against them are also adequate to show substantial assistance, since unlike the professional and underwriting defendants, they were insiders and consequently had a higher duty to investors. *See Strong v. France,* 474 F.2d at 752; *IIT v. Cornfeld,* 619 F.2d at 923. Therefore, their motions to dismiss are denied. The allegations as to Adams, Hagen, Pudlo and Taylor, however, fail to show the contemporaneous involvement which this court previously ruled is necessary to establish a transactional nexus. Accordingly, the Hudsons' claims against them are dismissed with prejudice.

II. *Lack of Specific Allegations Concerning Certain Defendants*

Four of the individual defendants also move to dismiss for lack of any specific allegations against them. Plaintiffs have alleged that Meyer Heller made above-market loans to the Flowerland entities during the period 1976–80, served as a paid consult-

ant to them and received money from a loan obtained by California Flowerland '79 intended for product purchases. These are sufficient. The allegations against Hochswender are not. Plaintiffs have failed to allege the dates at which he held various officer and director positions or to charge him as a principal, general partner with a fiduciary duty to limited partners, or otherwise as an aider and abettor, as required by this court's previous rulings. The allegations against Medearis and Adamse are similarly insufficient for failure to allege the dates at which they held various positions in the Flowerland entities. Because plaintiffs have alleged that these three individuals held high positions in the Flowerland entities, they are dismissed without prejudice. Plaintiffs will have one final opportunity to make allegations against them with adequate specificity. Plaintiffs have twenty (20) days from the date of this order to do so. Defendants may not respond, because they have already fully briefed the issue. If the allegations are still insufficient, the court will dismiss them *sua sponte;* defendants should not file any further motions to dismiss.

Finally, the individual defendants again complain that plaintiff has failed to particularize the allegations against them. This court has already ruled that plaintiffs have satisfied this requirement (except as to Hochswender, Medearis and Adamse as discussed above) by specifying who is charged as an aider and who as a principal and by alleging supporting facts. Accordingly, the motion is denied as to all of these defendants except Hochswender, Medearis and Adamse.

III. *Private Right of Action under § 17(a)*

Previously, in ruling on motions to dismiss the second amended complaint, this court pointed out the dilemma it faces with respect to plaintiffs' § 17(a)(2) and (3) claims based on negligence. The Supreme Court held in *Aaron v. Securities Exchange Commission,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), that § 17(a)(2) and (3) do not require scienter. One year after

*Aaron,* the Ninth Circuit decided rather cryptically in *Stephenson v. Calpine Conifers II, Ltd,* 652 F.2d 808, 815 (9th Cir.1981), that a private right of action exists under § 17(a), without distinguishing between subsections.

Taken together these cases appear to stand for the proposition that § 17(a) provides a private cause of action with a negligence standard. However, this combination would virtually eliminate the need for litigants to pursue claims under § 10(b), with its more stringent scienter requirement. *See, e.g., Malik v. Universal Resources Corp.,* 425 F.Supp. 350, 363 (S.D.Cal.1976). Although *Aaron* was an SEC civil enforcement action, the Supreme Court's analysis of the statutory language provides no basis for distinguishing between SEC and private actions. The Court specifically eschewed looking into the policy considerations behind § 17(a), finding the statute clear on its face. For this court to read into the statute a different standard for private causes of action would require it to ignore the rationale of *Aaron.*

The *Stephenson* court did not consider the implications of the negligence standard found in *Aaron.* It also failed to analyze the intent of Congress with respect to private actions in accordance with *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568–74, 99 S.Ct. 2479, 2485–88, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Instead, it simply cited to that portion of Judge Friendly's concurrence in *Securities and Exchange Commission v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), which found that " 'there [is] little practical point in denying the existence of a right under § 17 once it is established that an aggrieved buyer has a private action under § 10(b) of the 1934 act . . . .' " 652 F.2d 815. *Stephenson,* however, omitted Judge Friendly's caution immediately following the language it quoted: "with the important proviso that fraud, as distinct from negligence, must be alleged."

401 F.2d at 867. Moreover, as Judge Friendly noted in *Texas Gulf Sulphur,* the legislative history points to the conclusion that Congress did not intend a private right of action under § 17(a). Finally, finding a private right of action under § 17(a) would undermine Congress' careful statutory scheme by introducing a negligence standard unprotected by the procedural safeguards surrounding the other negligence sections. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 208–10, 96 S.Ct. 1375, 1388–89, 47 L.Ed.2d 668 (1976).

Faced with this dilemma, this court initially ruled that a private cause of action based on negligence exists under § 17(a), but certified its ruling for immediate appeal pursuant to 28 U.S.C. § 1292(b) because it found this result absurd. The Court of Appeals, however, denied defendants' petition for permission to appeal.

■ This court now reconsiders its previous ruling and decides that application of the analysis of legislative intent mandated by the Supreme Court compels the conclusion that there is no private right of action under § 17(a). It is true that the courts have split on this issue, *compare, e.g., Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) (private right of action exists), *with Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 155 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (no private right of action). However, those courts which have applied the analysis of legislative intent mandated by *Cort* and its progeny and have considered the implications of *Aaron* have uniformly ruled against a private right of action. *See, e.g., Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 551 F.Supp. 580 (S.D.Ohio 1982); *Keys v. Wolfe,* 540 F.Supp. 1054, 1060 (N.D.Tex.1982); *Hill v. Der,* 521 F.Supp. 1370 (D.Del.1981). The court finds the cogent analysis of these cases persuasive.

This court will not embark on a trial based on a negligence standard which would annihilate the careful limits of § 10(b) of the 1934 Act and §§ 11 and 12 of the 1933 Act, contrary to Congress' intent. Accordingly, plaintiffs' § 17(a) claims are dismissed on the ground that there is no private right of action. The court will enter judgment on plaintiffs' § 17(a) claims under Rule 54(b), Fed.R.Civ.P., if plaintiffs so request.

### IV. Inadequate Allegations of Seller Status Under § 12

The court previously dismissed with prejudice the § 12 claims against all defendants except the underwriters, issuers, Estates, King, Smith and Holmes for insufficient allegations of seller status. The court further noted that the § 12 claims against the remaining defendants would be limited to those who were substantial factors in sales to the plaintiffs. Now that plaintiffs have conceded in their complaint that IFP was the only underwriter so involved, the § 12 claims against Advest, Birr Wilson, First Affiliated Securities and First Florida Securities must be dismissed.

■ Defendants King, Smith and Holmes move to dismiss the § 12 claims against them based on a supposed absence of allegations that they directed the sales to the plaintiffs. This court previously held that these defendants were "sellers" within the meaning of § 12 based on their alleged supervision and management of sales by Estates. Plaintiffs allege that Estates supervised the sales to the Hudsons and Blechman. This is sufficient to show that these defendants were substantial factors in the sales to the Hudsons. However, Blechman's claims against them must be dismissed with prejudice because their management of Estates commenced after Blechman's investment.

### V. Inadequate Allegations of Control Status under §§ 15 and 20

Six of the individual defendants move to dismiss the Hudsons' §§ 15 and 20 claims against them on the grounds that they are not alleged to have controlled California Flowerland '79. Three of them also seek dismissal of Blechman's claims on the ground that they are not alleged to have controlled Delta Greenhouse, Ltd.

The Hudsons have adequately pled control status with respect to Adams, Adler, Hagan, Holmes and Taylor based on their positions as officers and directors of California Flowerland '79. The Hudsons' claims against King, however, are dismissed with prejudice. Even plaintiffs apparently concede that he did not control California Flowerland '79. (Exhibit to Memorandum in Support of Third Amended Complaint (list of controlling persons)). Similarly, both the Hudsons' and Blechman's claims against Long must be dismissed with prejudice for failure to plead control status, as plaintiffs also appear to concede. *Id.* Blechman's claims against Taylor and Adams are dismissed with prejudice because they are alleged to have attained control status only after Blechman's investment.

### VI. Miscellaneous Motions to Dismiss

The remaining motions to dismiss need not be reached, either because they are mooted by this opinion or because they have already been fully addressed by previous rulings of this court.[7]

### VII. Pendent Claims

#### A. Seventh Claim—Negligent Misrepresentation

##### 1. Statutory claim

■ This court previously ruled that California Corporations Code § 25501, like § 12, restricts liability for negligent misrepresentation in the offer or sale of securities under § 25401 to those who were substan-

---

**7.** The court notes that its previous grant of Blechman's motion for reconsideration of the dismissals of his § 12(1) and state law fraud, negligent misrepresentation and malpractice

claims on statute of limitations grounds did not reinstate those claims to the extent that they were also dismissed on other grounds.

tial factors in the sale. The court further ruled that § 25504.1 extends liability for violations of § 25401 to aiders and abettors, but does not apply to Blechman's claims because he purchased before its 1977 effective date. Accordingly, Blechman has stated statutory claims for negligent misrepresentation only against those defendants liable to him as a seller under § 12, while the Hudsons have stated such claims against both those liable to them as sellers under § 12 and those liable to them as aiders and abettors under § 10(b). The rest are dismissed with prejudice.[8]

### 2. Common law claims

■ Plaintiffs ask this court to reconsider its ruling that reliance must be pled to state a common law claim for negligent misrepresentation. The court declines the invitation. Plaintiffs rely on *Vasquez v. Superior Court,* 4 Cal.3d 800, 814, 94 Cal. Rptr. 796, 484 P.2d 964 (1971), but *Vasquez* only goes to *proof* of reliance by inference from material misrepresentations. The only reliance allegations are those contained in ¶¶ 6 and 7, which are the same allegations that establish the transactional nexus to the fraud under § 10(b). Thus, plaintiffs have stated common law claims for negligent misrepresentation only against the same defendants for whom they satisfied the transactional nexus requirement. The rest are dismissed with prejudice.

### B. *Eighth Claim—Fraud*

#### 1. Statutory claims

The court has already held that § 25400 applies only to sellers. Plaintiffs ask the court to reconsider this ruling as well, based on a strained reading of § 25500 for which they cite no authority. The statutory fraud claims against defendants not found above to be "sellers" under § 12 are dismissed with prejudice.

**8.** Defendants also argue that the Hudsons have no claim under § 25401 because that section does not apply to "simple non-disclosures," but only to misrepresentations and omissions of fact necessary to make statements not misleading, and the court has already found that the

### 2. Common law claims

■ Reliance is required for common law fraud just as for common law negligent misrepresentation. Therefore, the common law fraud claims are dismissed with prejudice against all defendants except those against whom common law negligent misrepresentation claims were found above to be stated.

### C. *Ninth Claim—Malpractice*

Plaintiffs properly concede in their opposition that under the court's previous rulings they have malpractice claims only against those defendants who rendered opinions in the offering circulars upon which plaintiffs relied. Thus, Blechman has claims against Adler and Stiller, Adler & Schwartz, and the Hudsons have claims against Bronson and Grant. All other claims are dismissed with prejudice.

## VIII. *Class Certification Motions*

Plaintiffs seek certification of two plaintiff and two defendant classes. Defendants oppose such certification and also challenge the adequacy of Blechman's representation of any plaintiff class.

### A. *Certification of Plaintiff Classes*

Claims under federal securities laws are particularly susceptible to class action treatment. *In re Caesar's Palace Securities Litigation,* 360 F.Supp. 366, 395–96 (S.D.N.Y. 1973), cited approvingly in *Blackie v. Barrack,* 524 F.2d at 903. Plaintiffs seek to certify two plaintiff classes under Rule 23(b)(3), Fed.R.Civ.P. In order to do so they must not only meet the requirements of (b)(3) but also satisfy the four prerequisites of Rule 23(a). The two classes plaintiffs propose are: (1) a "material omission class" of claimants under §§ 10, 12(2), 17(a), 15 and 20; and (2) a "registration class"

complaint primarily alleges failure to disclose. This argument fails for two reasons. First, the court found that plaintiffs primarily alleged material and misleading omissions, not "simple" non-disclosures. Second, primarily does not mean exclusively.

under § 12. The § 17(a) claims were dismissed above. The Material Omission Class would include all those who invested in any of the thirty-six "distributing partnerships" from 1976–80. The Registration Class would include all those who invested in any of the Flowerland Limited Partnerships.

Plaintiffs attempt to justify these sweeping classes on a "concerted scheme" or "common course of conduct" theory. However, this court has already held that plaintiffs failed adequately to allege conspiracy or concerted scheme. Moreover, the principal cases upon which plaintiffs rely for their argument that allegations of a common course of conduct show that common questions predominate are clearly distinguishable. *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909 (9th Cir.1964), involved a conspiracy, while *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975) and *In re Equity Funding,* MDL No. 142, slip. op. (C.D.Cal. Mar. 26, 1976), involved open market transactions. Neither are present here. In addition, this court previously held that the class under § 12 would be limited to those investors with claims against the handful of "sellers" to the named plaintiffs as required by *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973).

The critical issue in this case is whether questions of law or fact common to the class exist, Rule 23(a)(2), and if so, whether they predominate over individual issues, Rule 23(b)(3):

> a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for a separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Advisory Committee's Note, Proposed Amendments to the Rules of Civil Procedure for the United States District Court, 39 F.R.D. 69, 103 (1966) (citations omitted). It is necessary to address this issue on a claim by claim basis, keeping in mind, among other things, the similarity or dissimilarity of the misrepresentations or omissions, by whom the statements or omissions were made and the time periods involved. The remaining questions of numerosity, typicality and adequacy of representation under Rule 23(a) and superiority of the class-action device under Rule 23(b)(3) are discussed as pertinent below.

1. § 10(b)

*La Mar* applies with equal force to the § 10(b) class and the § 12 class. Class membership is limited to those investors with claims against the same defendants against whom the named plaintiffs have claims. As this court has previously ruled, the juridical link and conspiracy exceptions to *La Mar* do not apply in this case.

The Rule 23(b)(3) requirement that questions of law or fact predominate over questions affecting only individual members of the class is met only if the class is limited to those who invested in the same partnerships as the named plaintiffs, because the representations varied from partnership to partnership. Similarly, the requirement that the claims of the representative parties be typical of the claims of the class, Fed.R.Civ.P. 23(a), permits plaintiffs to represent only those who invested in the same partnerships as plaintiffs did.

Accordingly, the class the Hudsons may represent with respect to § 10(b) claims consists of investors in California Flowerland '79 who have claims against Bronson, Alexander Grant, Independent Financial Planners, the Flowerland Limited partnerships and entities, Estates, King, Smith, Holmes and those other individual officers and directors against whom the Hudsons have stated § 10(b) claims. The class which Blechman may represent is limited to those with claims against Adler and the Stiller firms, the Flowerland partnerships and entities, Estates, and those individual officers and directors against whom Blechman has

stated § 10(b) claims. The court is prepared to certify such classes, subject to a showing of numerosity. The procedure the parties must follow with respect to numerosity for the § 10(b) and other classes is set forth below.

Defendants argue that the need to show individual reliance precludes certification of § 10(b) classes. However, this court previously held that reliance could be rebuttably presumed because the complaint primarily alleged fraud by omission rather than affirmative misrepresentation. If it becomes clear as this action proceeds that omissions do not predominate, the court may decertify the § 10(b) classes.

### 2. § 12(2) Claims

In accordance with the court's previous ruling, and subject to a showing of numerosity, the court is prepared to certify a class represented by the Hudsons composed of investors in California Flowerland '79 with claims against defendants Independent Financial Planners, Estates, King, Smith, Holmes and the Flowerland Limited Partnerships and Entities. Blechman's § 12(1) claims are concededly time-barred.

■ Plaintiffs argue that the Hudsons may represent a registration class composed of all investors in all the Flowerland Limited Partnerships based on their theory that all the offerings were integrated. However, integration only goes to the issue of whether the issuances should have been registered. It does not affect the *La Mar* requirement that plaintiffs represent only those investors who purchased from the same "sellers" as plaintiffs.

### 3. §§ 15 and 20 Claims

The Hudsons may represent a class of investors in California Flowerland '79 against those individuals who are adequately alleged to have controlled that partnership, subject to a showing of numerosity. Similarly, Blechman may represent a class of investors in Delta Greenhouse, Ltd. against individuals who are adequately alleged to have controlled that partnership, subject to a showing of numerosity.

### 4. § 12(1) Claims

The Hudsons may represent the same class with respect to § 12(2) claims as they may with respect to § 12(1) claims. Blechman may represent investors in Delta Greenhouse, Ltd. who have claims against the Flowerland partnerships and entities and Estates, subject to a showing of numerosity. As with the § 10(b) claims, common questions of law and fact concerning alleged misrepresentations and omissions will predominate over individual questions.

### 5. Pendent claims

■ Plaintiffs seek to represent a nationwide class of investors with respect to pendent common law claims of fraud, negligent misrepresentation and malpractice, and statutory claims of fraud and negligent misrepresentation. Individual questions of law and fact would vastly overshadow any common questions if the court were to certify classes based on the common law claims. *See, e.g., In re Hotel Telephone Charges,* 500 F.2d 86, 89 (9th Cir.1974); *In re United States Financial Securities Litigation,* 64 F.R.D. 443, 455 (S.D.Cal.1974); *McFarland v. Memorex,* 96 F.R.D. 357 (N.D. Cal.1982); *Elster v. Alexander,* 76 F.R.D. 440, 442 (N.D.Ga.1977), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979). The elements of common law fraud, negligent misrepresentation and malpractice vary, of course, from state to state. Moreover, even if the court were to consider a California class only, proof of individual reliance would be necessary, as the court previously held. The rebuttable presumption of reliance permitted in *Vasquez v. Superior Court,* 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1971), with respect to California common law fraud claims is distinguishable on both the law and the facts. *Vasquez* dealt only with claims governed by California law, and involved uniform sales representations to class members on the basis of a standardized "sales pitch," unlike the fraud alleged here. Accordingly, no common law classes may be certified.

In contrast to the common law claims, California statutory claims for negligent misrepresentation and fraud do not require individual proof of reliance. However, the variations in the relevant state statutes preclude certification of a nationwide class. Moreover, this court is not prepared to exercise its discretionary jurisdiction over pendent claims, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), based on statutes from jurisdictions outside the forum state. Both the complexities of this action and the court's reluctance to reach out to decide claims under the laws of foreign jurisdictions counsel against assuming such jurisdiction. Accordingly, the court is only prepared to certify classes for purposes of California statutory claims of fraud and negligent misrepresentation, subject to a showing of numerosity. As held above, the Hudsons have claims of negligent misrepresentation under the California Corporations Code against the same defendants against whom they have claims under §§ 10(b) and 12. Therefore, the Hudsons may represent investors in California Flowerland '79 who have claims against those same defendants. Blechman, however, may not represent a pendent statutory class because he does not appear to have a claim under California law. There is no allegation showing that his investment had any nexus with California.

The court finds that the classes defined above are appropriate for class action treatment under Rule 23(b)(3), subject to a showing of numerosity. Common questions of law and fact would predominate because class members' claims would all require determination of whether material omissions and misrepresentations were made in the offer and sale of California Flowerland '79 and Delta Greenhouse, and whether those securities should have been registered. Moreover, individual reliance would be rebuttably presumed. Similarly, the claims of the Hudsons and Blechman would be typical of the claims of class members. In addition, proceeding by class action would be the most fair and efficient method of adjudication of this controversy. Class members would benefit from the economies achieved by class litigation in view of the comparatively small potential individual recoveries as compared to the cost of proceeding individually in such complex securities litigation. It would also achieve judicial economy to concentrate the litigation of these claims in this forum. The class actions as so defined would be manageable, although the sweeping classes originally proposed by plaintiffs would not have been.

The court also finds that the remaining prerequisites of Rule 23(a) are met. The typicality requirements of (a)(3) have been described as a buttress to the fair representation requirements of (a)(4). *In re Four Seasons Securities Laws Litigation,* 502 F.2d 834, 841 (10th Cir.), *cert. denied,* 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974). The wisdom of requiring typicality is that a plaintiff whose claims are in any way atypical may focus his efforts on the unique aspects of his claim and neglect the aspects common to the class. Or, if defenses are unique to the plaintiff, he or she may concentrate on those to the detriment of the class. Therefore, plaintiff could not adequately represent the class.

The representative parties here will fairly and adequately protect the interests of class members. As the classes are defined, the interests of the representative parties would not conflict with the interests of absent class members. Defendants' argument that a disabling conflict of interest exists between the representative parties and those class members who are asserting the validity of tax deductions taken on Flowerland investments in Internal Revenue Service and Treasury proceedings is not well taken. Whatever the resolution of those claims, if any potential conflict exists, it may be eliminated by class members' use of the opt-out mechanism provided under Rule 23(c)(2). Therefore, it would be premature to deny class certification at this time. If numerosity problems arise at a later time because of exercise of the opt-out right, the court may decertify the classes at that time.

Representation is also adequate in that counsel for both the Hudsons and Blechman are experienced in complex securities litigation of this nature and are well qualified to serve as class counsel. Defendants do not dispute their ability. Defendants do, however, question the adequacy of representation by Blechman and his counsel Kriendler & Kriendler based on alleged conflicts of interest. Defendants argue that Kriendler previously represented as a plaintiff in this action the law firm of Bernstein, Sewell and Kove, who in fact should have been a member of the proposed defendant underwriter class or charged as a "seller." Defendants also argue that Blechman improperly hired Kriendler despite his awareness of the conflict. Defendant's solicitude for the interests of plaintiff class members is misplaced. There is nothing in the record to support defendant's characterization of Bernstein as a defendant.

The relevant facts presented to the court in the affidavit of Kove, a partner in the Bernstein firm, and Blechman's deposition are as follows. At the request of a client, the Blechman firm reviewed the offering circular for Delta Greenhouse, invested itself in Delta Greenhouse and recommended it as a tax shelter to other clients, including Blechman. The firm apparently had no information about Delta Greenhouse other than the offering circular, and passed on the circular to Blechman with the caution that he read it for himself and make his own decision. Bernstein also arranged the selling papers and accepted Blechman's check. For its work, Bernstein received a commission from the client who originally approached it about Delta Greenhouse. The total commissions received were less than the firm's loss on its own investment in Delta Greenhouse. The firm originally wished to represent a plaintiff class in this litigation. It engaged the Kriendler firm as its counsel, but subsequently withdrew as a named plaintiff in response to defendants' charges of a conflict of interest. Blechman took the firm's place.

Defendants argue, first, that Bernstein is potentially liable as an under-

writer. However, it does not come within the statutory definition of underwriter because it neither dealt with the issuer directly nor acted on the issuer's behalf. 15 U.S.C. § 77b(11). Defendants contend, second, that Bernstein is liable as a seller under § 12. As this court previously held, the test for determining seller status is whether defendant was a substantial factor in the sale. Although in certain circumstances where lawyers play an active role in sales transactions, they may be liable as sellers, each case must be analyzed on its own facts. Here, Bernstein was not a seller because it acted only as a passive conduit of the offering circular and selling documents, rather than as an active participant in the sales. Thus, Bernstein was not a substantial factor in Delta Greenhouse sales. *Compare Croy v. Campbell,* 624 F.2d 709 (5th Cir.1980) (lawyer who recommended real estate investment to plaintiffs as best tax shelter he had seen, provided sales brochure to plaintiffs and used brochure to make calculations for them, and whose fees were paid by developer, held not a seller) *with Junker v. Crory,* 650 F.2d 1349 (5th Cir. 1981) (attorney who actively negotiated and recommended a merger to stock purchasers was a "seller"). Therefore, based on the facts now before the court, Bernstein is potentially a member of the plaintiff class rather than an unnamed defendant, and neither Kriendler nor Blechman are disabled by any conflict from adequately representing investors.

Because the parties directed their arguments to the broad classes proposed by plaintiffs, the court lacks sufficient information to determine whether the narrower classes held above to be suitable satisfy the requirement that they are so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). The court is prepared to certify these classes if numerosity is established under the following procedure. Plaintiffs have twenty (20) days from the date of this order to submit a brief not to exceed 12 pages and any necessary supporting affidavits addressing only the question of numerosity as to the classes the court has defined above. After plaintiffs file their

brief, defendants have twenty (20) days to respond by a single joint brief not to exceed 12 pages. The issue will then be submitted.

### B. *Defendant Classes*

Plaintiffs seek certification of two defendant classes of underwriters. The first, which they entitle "Defendant Registration Class," would be composed of all underwriters who offered and sold interests in any Flowerland partnership. Plaintiffs seek a determination of whether the securities should have been registered but were not, in violation of § 12(1). The second, entitled "Defendant Material Omission Class," would be composed of all underwriters who offered and sold interests in the distributing partnerships. Plaintiffs seek a determination that the offering circulars contained material omissions or misrepresentations in violation of §§ 12(2) and 17(a)(2) and (3). The § 17 claims were dismissed above.

The proposed defendant classes clearly do not come within any category of class action recognized under Rule 23, Fed.R.Civ.P. Indeed, they suffer so many defects, each of which alone would be fatal, that the court need only address a few.

■ Plaintiffs have failed to make the threshold showing that the proposed defendant classes meet the prerequisites of numerosity, commonality, typicality and adequacy of representation. Fed.R.Civ.P. 23(a). For example, under *La Mar,* 489 F.2d at 461, Material Omission class would consist only of the handful of defendants involved in material omissions with respect to sales to the named plaintiffs, while the Defendant Registration class would consist solely of one member.

Even if plaintiffs could meet these threshold requirements, they cannot fit their proposed classes within any of the three categories provided by Rule 23(b). Separate actions would not risk establishing incompatible standards of conduct as required by (b)(1)(A). Rather, any differences in outcome would be based on the same standard of conduct, and simply reflect different defenses. Nor would there be any risk of disposing of or impeding

other class members' defenses, since nonparties would not be collaterally estopped. Indeed, only if plaintiffs succeeded in certifying a defendant class would such a risk exist. *See, e.g., McDonnell Douglas Corp. v. United States District Court,* 523 F.2d 1083, 1086 (9th Cir.1975) (mere possibility of inconsistent results and inconsistent resolution of same question of law does not establish incompatible standards of conduct under 23(b)(1)(A); nor does complexity and expense of litigation justify a 23(b)(1)(B) class). Rule 23(b)(2) also does not apply. Defendants have not acted on grounds generally applicable to the class. To the contrary, different defendants have allegedly been involved in different misrepresentations in different transactions. Plaintiffs' last-ditch attempt to come within Rule 23(b)(3) also fails. Common defenses do not predominate.

Finally, in this case there was no agreement among underwriters providing for a common defense and shared expenses in the event of lawsuits arising from an issuance of securities, as in the three cases upon which plaintiffs primarily rely. *In re Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Cal.1978); *In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal.1981); *McFarland v. Memorex,* 96 F.R.D. 357 (N.D.Cal. 1982). Therefore, these cases provide no authority for certification of the defendant classes proposed here.

CONCLUSION

This is the third amended complaint. It is also the third lengthy memorandum by the court setting forth the legal standards plaintiffs must meet. No further motions, amendments or briefing addressed to the sufficiency of the complaint will be permitted, with the two limited exceptions set forth above: amendments of the complaint, if any, to make specific allegations against Hochswender, Medearis and Adamse, without briefing, and limited further briefing on the numerosity issue only.

IT IS HEREBY ORDERED that defendants' motions to dismiss are GRANTED in part and DENIED in part; and plaintiffs'

motion to certify defendant classes is DENIED.

IT IS FURTHER ORDERED that plaintiffs shall file and serve their amended complaint in conformity with this order within twenty (20) days of the date of this order and defendants shall file and serve their answers within thirty (30) days after service of the amended complaint.

IT IS FURTHER ORDERED that memoranda regarding numerosity shall be filed and served in accordance with p. 632 of this order.